EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Marcos Morell Corrada, et al. Recurridos v. Luis Francisco Ojeda, et al Peticionarios | Certiorari 2000 TSPR 120 |

Número del Caso: CC-1999-0175

Fecha: 20/julio/2000

Tribunal de Circuito de Apelaciones: Circuito Regional I

Panel Integrado por:     Hon. Fiol Matta
                         Hon. Rodríguez de Oronoz
                         Hon. Gierbolini

Abogados de la Parte Peticionaria:

                         Rivera Cestero & Marchand Quintero
                         Lcdo. Juan R. Marchand Quintero
                         Lcdo. Francisco Ortiz Santini

Abogados de la Parte Recurrida:

                         Cancio Nadal Rivera Díaz & Berrios
                         Lcdo. Luis Berríos Amadeo

Materia: Difamación

    Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Marcos Morell Corrada, et al.

    Demandantes-recurridos

       vs.                CC-99-175    CERTIORARI

Luis Francisco Ojeda, et al.

    Demandados-peticionarios

OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico, a 20 de julio de 2000

El señor Luis Francisco Ojeda, productor y animador del programa radial "Esta Noche con Ojeda", durante los días 14 y 15 de octubre de 1996, hizo expresiones vinculando al Lcdo. Marcos Morell Corrada con actos impropios indicativos de corrupción. A raíz de tales manifestaciones, el 16 de octubre de ese mismo año el Lcdo. Morell, su esposa y la sociedad legal de gananciales constituida por ambos, radicaron demanda ante el Tribunal de Primera Instancia, Sala Superior de San Juan, contra el Sr. Ojeda, su esposa, la sociedad legal de gananciales compuesta por éstos y el Mundo Broadcasting Corp.; acción basada en las Secciones

1 a 9 del Código de Enjuiciamiento Civil, el Artículo 1802 del Código Civil y el Artículo 2, Sección 8, de la Constitución del Estado Libre Asociado de Puerto Rico. Los demandantes alegaron, en síntesis, que el Sr. Ojeda promovió un patrón de difusión de información falsa, libelosa, calumniosa y difamatoria contra los demandantes. Adujeron, además, que el codemandado Ojeda actuó en forma negligente, maliciosa, temeraria, premeditada e intencional con el fin de causarles daño. Señalaron, adicionalmente, que éste permitió que terceras personas se manifestaran de igual forma en contra del Lcdo. Morell. Finalmente, solicitaron que se les concediera la suma de $1,300,000.00 por concepto de sufrimientos y angustias mentales.[1]

La parte demandada sometió su contestación el 4 de marzo de 1996, levantando varias defensas afirmativas; entre otras, alegó que las expresiones fueron realizadas en virtud de su facultad constitucional a la libertad de expresión, y que lo publicado era información cierta. Dicha parte demandada, adicionalmente, sostuvo que las fuentes utilizadas para obtener la información eran confiables, que el Lcdo. Morell era una figura pública, y que no medió negligencia ni malicia en las expresiones.

El 27 de noviembre de 1996 la representación legal de los demandados notificó a los demandantes una oferta de

---

[1] Posteriormente, esta demanda fue enmendada para incluir como co-demandantes a los hijos del Lcdo. Morell e

sentencia y pago, conforme a las disposiciones de la Regla 35.1 de Procedimiento Civil, por la cantidad de $5,000.00.[2] Esta oferta fue rechazada por la parte demandante, mediante carta fechada el 5 de diciembre de 1996, por entender que la cantidad ofrecida era irreal e irrazonable.[3]

El 25 de septiembre de 1997, la parte demandada radicó una moción de sentencia sumaria, a la cual se opusieron los demandantes. Luego de presentados varios escritos en torno a la referida moción, el 23 de diciembre de 1997 el Tribunal de Primera Instancia, Sala Superior de San Juan, dictó sentencia declarando con lugar la moción de sentencia sumaria, ordenando, en consecuencia, la desestimación de la demanda. Condenó, además, a la parte demandante a pagar las costas y gastos, <u>negando de forma expresa la concesión de honorarios de abogado</u>. El foro de instancia, al así resolver, razonó que:

> "Surge de los documentos presentados por la parte demandada que la oferta de Sentencia le fue cursada a la parte demandante allá para el 27 de noviembre de 1996. La misma fue rechazada por la parte demandante mediante carta de 5 de diciembre de 1996. <u>Para aquel entonces se encontraba planteada ante el tribunal la</u>

---

incrementar la suma reclamada a $3,100,000.00.

[2] En la oferta notificada, los demandados advirtieron a la parte demandante sobre el riesgo al que se exponían de pagar honorarios de abogado, en caso de recibir una cantidad idéntica o inferior a la ofrecida, o de ser desestimada su reclamación.

[3] A pesar de haber rechazado la oferta, la parte demandante instó a los demandados a celebrar una reunión con el propósito de discutir la posibilidad de llegar a una transacción que pusiera fin al pleito.

> controversia en torno a si debía ordenarse a la parte demandada la divulgación de sus fuentes de información en contestación a un interrogatorio cursádole por las demandantes. Los fundamentos opuestos por las partes entonces para sostener sus posiciones no encontraban apoyo jurisprudencial en nuestra jurisdicción: por tanto, se trataba de un asunto novel.
>
> El Tribunal no puede acceder a la solicitud de recobro de honorarios de honorarios de abogado presentada por la parte demandada a la luz de los incidentes procesales vigentes a la fecha en que se cursa la oferta de sentencia. A ese entonces, el tribunal tenía ante sí la resolución de un asunto hasta entonces no pautado en nuestra jurisdicción." (Enfasis suplido.)

Inconforme con esta última determinación, el 30 de diciembre de 1997 la parte demandada presentó una moción solicitando, de manera específica, la imposición de honorarios, por entender que tenía derecho a ello conforme a las disposiciones de la Regla 35.1 de Procedimiento Civil. Mediante resolución emitida el 28 de mayo de 1998, el tribunal de primera instancia se reafirmó en su posición y, en su consecuencia, denegó por segunda ocasión la imposición de honorarios de abogado.

La parte demandada solicitó la revisión de esta resolución, mediante recurso de certiorari presentado el 30 de junio de 1998, ante el Tribunal de Circuito de Apelaciones. Señaló que los fundamentos expresados por el tribunal de instancia, negando los honorarios, eran erróneos, por estar basados los mismos en la alegada ausencia de temeridad por parte de los demandantes. Adujo que su reclamación de honorarios está basada en las

disposiciones de la Regla 35.1 de Procedimiento Civil, la cual alegadamente no requiere una previa determinación de temeridad. El 30 de octubre de 1998, el Tribunal de Circuito dictó sentencia mediante la cual confirmó la resolución del tribunal de instancia[4], aun cuando, realmente, por fundamentos un tanto distintos. Razonó, en síntesis, el foro apelativo intermedio que:

> "A la luz de la normativa expuesta, y habiendo examinado cuidadosamente el expediente de autos, resolvemos que la oferta de transacción presentada por el señor Ojeda no fue razonable dentro del contexto específico del caso de autos. Por tanto, la Regla 35.1 resulta inoperante en el presente caso y los honorarios de abogado exigidos por el señor Ojeda bajo su autoridad no proceden. H.U.C.E. de Ame. v. V. & E. Eng. Const., supra.
>
> Nuestro examen de la apelación presentada por el Lcdo. Morell de la sentencia desestimatoria de su caso en instancia, Apelación KLAN9800802, nos convence de que al momento de la presentación de la oferta de transacción, no era realista optar por la cuantía de $5,000 propuesta, si consideramos que la pretensión fundada de obtener una victoria legal venía acompañada de un reclamo sustancialmente mayor al ofrecimiento de $5,000." (Énfasis nuestro.)

El 9 de marzo de 1999, la parte demandada radicó ante este Tribunal una petición de certiorari en revisión de la sentencia emitida por el Tribunal de Circuito de Apelaciones relativa a la controversia sobre la procedencia, o no, de los honorarios de abogado. Dicha

---

[4] En esa misma fecha, el Tribunal Apelativo emitió una segunda sentencia confirmando la decisión de instancia respecto a la acción de daños presentada; esto es,

parte demandada le imputó al tribunal apelativo intermedio haber errado:

> "...al confirmar la denegatoria al recobro de la partida de honorarios de abogado reclamada por los peticionarios al amparo de la Regla 35 de Procedimiento Civil."

Expedimos el recurso. Estando en posición de resolver el mismo, procedemos a así hacerlo.

I

La Regla 35.1 de Procedimiento Civil[5], según enmendada, establece:

> "*En cualquier momento antes de los diez (10) días precedentes al comienzo del juicio, la parte que se defiende de una reclamación podrá notificar a la parte adversa una oferta para consentir a que se dicte sentencia en su contra por la cantidad o por la propiedad o en el sentido especificado en su oferta, con las costas devengadas hasta ese momento.* Si dentro de los diez (10) días siguientes a la notificación la parte adversa notificare por escrito que acepta la oferta, cualquiera de las partes podrá presentarla junto con la notificación de su aceptación y la prueba de su notificación, y entonces el secretario del tribunal dictará sentencia. Si no fuere así aceptada, será considerada como retirada y la misma no será admisible en evidencia, excepto en un procedimiento para determinar costas, gastos y honorarios de abogado. *Si la sentencia que obtuviere finalmente la parte a quien se le hizo la oferta no fuera más favorable, ésta tendrá que pagar las costas, gastos y honorarios de abogado incurridos con posterioridad a la oferta.* El hecho de que se haga una oferta y esta no sea aceptada no impide que se haga otra subsiguiente. Cuando la responsabilidad de una parte haya sido adjudicada mediante sentencia pero queda aún por

---

confirmando la sentencia sumaria emitida mediante la cual se desestimó la demanda radicada.

[5] 32 L.P.R.A. Ap. 111, R. 35.1.

resolverse en procedimientos ulteriores la cuantía de los daños o extensión de dicha responsabilidad, la parte cuya responsabilidad se haya adjudicado podrá notificar una oferta de sentencia y la misma tendrá el mismo efecto que una oferta hecha antes de[l] juicio si se notifica dentro de un término razonable no menor de diez (10) días antes del comienzo de la vista. (Enfasis suplido.)

La antes transcrita disposición reglamentaria permite a la parte que se defiende de una reclamación presentar una oferta a la parte contraria, en cualquier momento previo a los diez (10) días precedentes al comienzo del juicio, consintiendo a que se dicte sentencia en su contra conforme a los términos de la oferta. Si ésta no fuese aceptada, según dispone la propia Regla, se considerará retirada la misma y sólo será admisible como evidencia en un procedimiento para fijar costas, gastos y honorarios de abogado. Si por el contrario, la oferta fuera aceptada, cualquiera de las partes podrá presentarla junto con la aceptación y la prueba de su notificación, para que el Secretario del Tribunal dicte sentencia. Esta disposición tiene su origen en la Regla 35.1 de Procedimiento Civil de 1958 y en la Regla 68 de Procedimiento Civil Federal. Comité de Procedimiento Civil, Informe del Secretariado de la Conferencia Judicial sobre las Reglas de Procedimiento Civil Propuestas por el Comité de Procedimiento Civil, Nov. 1978, pág. 103. Su obvio propósito es fomentar las transacciones, evitando así la celebración del juicio en su fondo. Ramallo Brothers v. Federal Express Corp., 129

D.P.R. 499, 508 (1991); 12 Wright, Miller and Marcus, Federal Practice and Procedure sec. 3001, pág. 66 (1997); Marek v. Chesny, 473 U.S. 1, 5 (1984).

A pesar de que la Regla 35.1 está disponible únicamente para la parte que se defiende de una reclamación, la misma constituye, en cierto sentido, un mecanismo neutral, el cual resulta beneficioso para ambas partes. De un lado, provee un mecanismo para que la parte demandante pueda recibir una compensación en un pleito en el cual, finalmente, no hubiese recibido indemnización alguna, o hubiera recibido una inferior a la ofrecida. De otro lado, permite a la parte demandada librarse de los costos de un pleito, de todos los contratiempos que conlleva este proceso y de poder ser responsabilizada por una suma de dinero mucho mayor a la ofrecida.

Dicha disposición reglamentaria, además, resulta beneficiosa para el sistema judicial en general, pues contribuye a la pronta disposición de las reclamaciones, reduciendo así la carga de los tribunales. En resumidas cuentas, la Regla 35.1 provee un mecanismo para que ambas partes en el pleito evalúen los riesgos y costos del litigio, y consideren seriamente la posibilidad de transigir el pleito en etapa anterior al juicio. Ramallo Brothers v. Federal Express Corp., ante, pág. 510; Marek v. Chesny, ante, pág. 10; Wright and Miller, ante.

La parte o disposición neurálgica de la Regla 35.1, en lo pertinente al caso que hoy ocupa nuestra atención, es

aquella en la que se establece que, si la oferta fuese rechazada y "la sentencia que obtuviere finalmente la parte a quien se le hizo la oferta no fuera más favorable, ésta <u>tendrá</u> que pagar las costas, gastos y honorarios de abogado incurridos con posterioridad a la oferta".[6] (Enfasis suplido.) Ello no obstante, resulta importante <u>enfatizar</u> el hecho de que este Tribunal estableció la norma a los efectos de que, para que una oferta de sentencia surta el efecto señalado anteriormente, la misma debe ser "realista, razonable y producto de la buena fe". <u>H.U.C.E. de Ame.</u> v. <u>V. & E. Eng. Const.</u>, 115 D.P.R. 711, 716 (1984). Estos criterios operan en virtud del <u>principio de buena fe</u>, el cual cobija todo nuestro sistema de derecho. Además, los mismos son necesarios para que se cumpla con el propósito básico de la Regla de fomentar las transacciones, <u>de forma tal que no se hagan ofertas irrisorias o irrazonables</u>. *Id.*

II

---

[6] Como norma general, el mecanismo de oferta de sentencia adoptado por la mayoría de los estados no concede honorarios de abogado. Solamente algunos de ellos permiten la concesión de esta partida bajo ciertas circunstancias. Rusell C. Fagg, <u>Montana Offer of Judgement Rule: Let´s Provide Bonafide Settlement Incentives</u>, 60 Mont. L. Rev. 39, 59 (1999). De igual forma, la Regla 68 de Procedimiento Civil Federal tampoco dispone para que se otorguen honorarios de abogado. En esta jurisdicción solamente se ha permitido la concesión de esta partida en aquellos casos en que la Regla aplica junto a otra disposición que autoriza dichos honorarios. <u>Marek</u> v. <u>Chesny</u>, ante, págs. 7-8; Thomas D. Rowe, Jr., <u>Offer of</u>

La controversia planteada en el presente caso se circunscribe a determinar si la imposición de honorarios de abogado a la parte demandante al amparo de las disposiciones de la citada Regla 35.1 --en la situación en que dicha parte no obtuvo una sentencia "más favorable" que la oferta de sentencia que rechazó-- está, o no, subordinada a que el foro de instancia haga una determinación sobre temeridad; dicho de otra manera, si la imposición de honorarios de abogado en esta clase de situaciones opera, o no, de manera automática.

A pesar de que en el pasado nos hemos enfrentado a dicha controversia --véase: Ramallo Brothers v. Federal Express Corp., 129 D.P.R. 499 (1991) --no hemos resuelto la misma de manera definitiva.[7] Como expresáramos en el antes mencionado caso, en lo pertinente, los proponentes de la alternativa a los efectos de que la imposición de honorarios, bajo la Regla 35.1, es automática señalan el carácter aparentemente mandatorio de la terminología utilizada en la Regla 35.1 --el uso del vocablo "tendrá"-- y el hecho de que los redactores de las Reglas de Procedimiento Civil colocaron el trámite de oferta de transacción, no como parte de la sección de costas y honorarios de abogado de dichas Reglas, y sí como un "procedimiento especial" bajo la sección de procedimientos

---

Judgement, 13 Moore´s Federal Practice, 3era ed., Mathew Bender, 2000, sec. 68.02[4], pág. 68-8.

con antelación al juicio, lo que tiende a indicar --según

esta posición-- que la Regla 35.1 tiene vida propia y

separada.

Por otro lado, y conforme expresáramos en Ramallo

Brothers, ante, los defensores de la posición contraria,

> "...esto es, de que la imposición de honorarios de abogado bajo la Regla 35.1 de Procedimiento Civil, ante, *no* opera en "forma automática", señalan que nuestra tradición jurídica en lo referente al aspecto de honorarios de abogado siempre ha estado predicada en la determinación de temeridad, cuestión que siempre ha descansado en la saña discreción del tribunal sentenciador. Esto es, se aduce que la citada Regla 35.1 no puede ni debe ser interpretada de forma tal que neutralice totalmente la discreción judicial, facultad del magistrado que, en última instancia, evita la comisión de injusticias al atemperar, y hacer flexible, la aplicación de la letra fría de la ley.

> Los promoventes de esta alternativa señalan, con alguna razón, que a diario en nuestros tribunales de instancia se dilucidan casos en que la parte demandante, *de buena fe*, cree que su posición y reclamo prevalecerá, resultado que en la mayoría de las situaciones dependerá de la determinación de credibilidad que, respecto a un testigo, haga el juzgador de los hechos. Señalan, como ejemplo, los casos de mala práctica o impericia de la medicina en que, a pesar de que la cuantía de los daños puede no estar en controversia, el resultado del caso depende exclusivamente de si el tribunal acepta o no la teoría de los peritos del demandante o de la parte demandada. En resumen, se argumenta que una interpretación de la Regla 35.1 de Procedimiento Civil, ante, como la que propone la parte demandante peticionaria puede otorgarle una indebida ventaja al litigante poderoso frente al que no lo es, resultando la misma en un freno indebido a la litigación genuina y de buena fe por cuanto puede inhibir al ciudadano que honestamente se siente perjudicado por la acción

---

[7] En Ramallo Brothers, ante, no resolvimos dicha cuestión por razón de que los hechos particulares del caso lo hacían innecesario.

de otro y que acude al foro judicial en busca de justicia."

## III

En reiteradas ocasiones hemos señalado, como principio rector en materia de hermenéutica, que "[a]l interpretar una disposición específica de una ley, los tribunales deben siempre considerar cuáles fueron los propósitos perseguidos por la Asamblea Legislativa al aprobarla y nuestra determinación debe atribuirle un sentido *que asegure el resultado que originalmente se quiso obtener*". (Citas omitidas) Chase Manhattan Bank v. Mun. de San Juan, 126 D.P.R. 759, 766 (1990). Véanse R. Elfren Bernier y José A. Cuevas Segarra, Aprobación e Interpretación de las Leyes en Puerto Rico, 2da ed., 1987, pág. 245; Vázquez v. A.R.P.E., 128 D.P.R. 513, 523 (1991); Dorante v. Wrangler of P.R., res. el 27 de abril de 1998, 98 J.T.S. 49, pág. 858; García v. E.L.A., res. el 13 de octubre de 1998, 98 J.T.S. 133, pág. 147. Nuestra obligación consiste en imprimirle efectividad a la intención del legislador, para así garantizar que se cumpla con el propósito para el cual fue creada la medida. Vázquez v. A.R.P.E., ante.

Con el fin de cumplir con esta obligación, inicialmente debemos atender el texto de la ley; esto es, y conforme establece el Artículo 14 del Código Civil, 31 L.P.R.A. sec. 14, cuando "...la ley es clara libre de toda ambigüedad, la letra de ella no debe ser menospreciada bajo el pretexto de cumplir con su espíritu." Sin embargo,

si la aplicación literal de un estatuto nos lleva a un resultado absurdo o ello conlleva un resultado opuesto a la verdadera intención o propósito del legislador, la literalidad puede ser ignorada. <u>Clínica Juliá</u> v. <u>Sec. de Hacienda</u>, 76 D.P.R. 509, 520 (1954).[8] Otra fuente que nos permite conocer la intención del legislador es el historial legislativo de la medida. <u>Dorante</u> v. <u>Wrangler of P.R.</u>, <u>ante</u>.

Según indicáramos previamente, el propósito de la Regla 35.1 consiste en <u>fomentar</u> las transacciones, evitando así la celebración de un juicio. Para lograr este objetivo, se creó un mecanismo que impone a la parte demandante que rechaza una oferta la penalidad de pagar a la parte demandada las costas, gastos y honorarios. Esta medida es una fundamentalmente punitiva. Esto así surge claramente de su historial legislativo. El origen de la Regla 35.1 de Procedimiento Civil vigente se remonta al Artículo 313 del Código de Enjuiciamiento Civil de 1933,

---

[8] Consistentes con tal razonamiento, en <u>Municipio de San Juan</u> v. <u>Banco Gubernamental de Fomento</u>, res. el 21 de mayo de 1996, 96 J.T.S. 73, págs. 1144-45, expresamos:

"En ocasiones, es necesario rechazar la interpretación literal del texto cuando ésta conduce a un resultado distinto al que el legislador intentó. *Pueblo v. Seda*, 82 D.P.R. 719, 725 (1961). De igual forma, al precisar la voluntad del legislador, debemos presumir la sensatez y razonabilidad de dichos actos legislativos. Una interpretación de la ley que conduzca a una conclusión absurda, debe ser rechazada. Elfrén Bernier & José Cuevas Segarra,

32 L.P.R.A. sec. 1361.[9] Distinto a la Regla 35.1 vigente,

el Artículo 313 solamente condenaba al pago de las costas.

Este Artículo era igual al 997 del Código de

Enjuiciamiento Civil de California,[10] el cual fue derogado

y sustituido por la Sección 998 de Procedimiento Civil,

Cal. Civil Proc. Code sec. 998 (West). Esta última tiene

el efecto de penalizar al demandante que rechaza una

oferta razonable y posteriormente recibe una cantidad

inferior a la ofrecida. Véanse Mesa Forecast Products,

Inc. v. St. Paul Mercury Insurance Company, 86 Cal.

---

*Aprobación e Interpretación de las Leyes en Puerto Rico*, Publicaciones J.T.S., 242 (1987)."

[9] Este Artículo disponía:

El demandado en cualquier pleito, podrá en todo tiempo antes de celebrarse el juicio, o de pronunciarse la sentencia, presentar al demandante una proposición de consentir que se dicte sentencia en contra suya por determinada cantidad o bienes, o por el concepto que se expresará en la proposición. Si aceptare el demandante la proposición, y así lo manifestare dentro de cinco días, presentará a la corte aquélla, con prueba de haber notificado al demandado su aceptación y en su vista deberá el secretario anotar la sentencia que se dicte de conformidad. Si no se hiciere la notificación de la aceptación, se considerará retirada la proposición, y no podrá aducirse como prueba en el juicio; y *si el demandante* no pudiese obtener una sentencia más favorable, no sólo no podrá reclamar las costas devengadas después de la proposición, sino que tendrá que pagar las causadas por el demandado desde la fecha en que éste propuso la transacción.

El Artículo 313 del Código de Enjuiciamiento Civil de 1933 no modificó el lenguaje de la versión aprobada en el 1904. Véase García v. Ratera, 40 D.P.R. 595, 602 (1930).

[10] Véase Rivera v. Geradino, 53 D.P.R. 107, 112 (1938).

Rptr.2d 398, 401 (1999); Brown v. Nolan, 159 Cal. Rptr. 469, 470 (1979).

Posteriormente, en el 1943, fueron aprobadas las Reglas de Enjuiciamiento Civil para las Cortes de Puerto Rico, las cuales incorporaron gran parte de las Reglas Federales de Enjuiciamiento Civil.[11] Disdier Pacheco v. García, 101 D.P.R. 541, 545 (1973). A diferencia del Artículo 313, la Regla 68 de Enjuiciamiento Civil contemplaba la posibilidad de que un tribunal concediera honorarios de abogado. Sobre este asunto, prescribía: "Si la parte adversa dejare de obtener una sentencia más favorable que la que le fue ofrecida, en ese caso no podrá recobrar costas devengadas con posterioridad a la fecha de la oferta y estará obligada a pagarlas a partir de dicha fecha, todo sin perjuicio de la concesión de honorarios de abogado si la Corte entendiere que cualquiera de las partes ha procedido con temeridad". Reglas de Enjuiciamiento Civil de 1943, R. 68.

En el 1958, fueron aprobadas las Reglas de Procedimiento Civil. En ese año se incorporó la Regla 35.1, a la cual corresponde el texto de la Regla actual. Esta disposición estuvo basada en la Regla 68 de

---

[11] Las Reglas de Enjuiciamiento Civil fueron aprobadas por el Tribunal Supremo en virtud de la Ley Núm. 9 de 5 de abril de 1941. Estas reglas no derogaron las disposiciones del Código de Enjuiciamiento Civil, sino que éste se mantuvo en vigor para aquellos casos y recursos a los cuales no les aplicaba las Reglas de Enjuiciamiento Civil.

Enjuiciamiento Civil de Puerto Rico y la Regla 68 de Procedimiento Civil Federal vigentes en ese entonces. Una de las diferencias entre la vigente Regla 35.1 de 1958 y las disposiciones de las cuales procedió, es que la primera añadió "los gastos y honorarios de abogado como penalidad en adición a las costas". (Énfasis nuestro.) Comité Consultivo sobre las Reglas de Enjuiciamiento Civil, Anteproyecto de Reglas de Enjuiciamiento Civil para el Tribunal General de Justicia de Puerto Rico, 1954, pág. 84. Al mismo tiempo, la Regla 35.1 de 1958 cubrió también lo dispuesto por el Artículo 313 del Código de Enjuiciamiento Civil. *Id.*

Recientemente, en Ramallo Brothers v. Federal Express Corp., ante, pág. 109, reafirmamos el carácter punitivo de la medida. En ese entonces, señalamos: "Dicho propósito u objetivo [el de fomentar las transacciones] se logra al proveérsele a las partes . . . un mecanismo procesal mediante el cual puede transigir la acción . . . y al establecer una sanción para el demandante . . . que rechaza la oferta formal de transacción, insiste en continuar adelante con su causa de acción y luego obtiene un remedio por sentencia que no es más favorable que la oferta que se le hizo".

Siendo esta medida una esencialmente punitiva, a nuestro juicio resulta mandatorio que el tribunal tome en

---

Martínez Fernández & Cía. v. García, 68 D.P.R. 391, 394 n.1, 395 (1948).

consideración la conducta de la parte que se pretende castigar. Es principio fundamental de nuestro sistema de administrar justicia no castigar a un litigante que ha acudido a la vía judicial para vindicar un derecho por el simple hecho de no haber prevalecido, o de haber recibido una cantidad inferior a la ofrecida. Santos Bermúdez v. Texaco P.R., Inc., 123 D.P.R. 351, 355 (1989); González v. The Commonwealth Insurance Co., res. el 2 de mayo de 1996, 96 J.T.S. 63, pág. 1042. Debe siempre existir un balance entre el interés de promover las transacciones y el problema que crearía la imposición de honorarios a un litigante de buena fe. "El interés gubernamental de mantener los tribunales abiertos al público es una característica vital recogida tanto en las reglas de procedimiento civil como en nuestra jurisprudencia". Santos Bermúdez v. Texaco P.R., Inc., ante.

Resolver de otra forma, implicaría la imposición de una sanción a una parte que ha litigado un asunto de forma genuina y de buena fe, lo que resultaría contrario al propósito de la Regla 35.1 y a nuestra obligación de interpretar las reglas de forma tal que "garanticen una solución justa, rápida y económica". (Énfasis nuestro.) Regla 1 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 1.[12]

---

[12] Al interpretar las Reglas de Procedimiento Civil, hemos reconocido como principio rector el asegurar una solución justa, rápida y económica. Molina v. C.R.U.V., 114 D.P.R. 295, 298 (1983).

De otra parte, somos del criterio que no debemos establecer una norma que "obligue" a una parte demandante a aceptar una oferta que honesta y realmente ésta considera irrazonable o irrisoria so pena de castigarlo por ello mediante la imposición de lo que podría resultar cuantiosos honorarios de abogado. Ello resulta totalmente contrario a la sabia y justa norma que este Tribunal estableciera en H.U.C.E. de Ame. v. V&E Eng. Const., ante --a los efectos de que la Regla 35.1 resulta inoperante cuando la oferta es irrazonable o irrisoria-- ya que dicha norma, al concederle facultad o discreción al tribunal para determinar cuando una oferta adolece de esa característica, precisamente parte de la premisa de que la imposición de honorarios de abogado, bajo la Regla 35.1, no es automática ni mandatoria.

A tenor con lo antes expresado, y en vista de nuestra obligación de "mantener abiertos" los tribunales a aquellos litigantes de buena fe, resolvemos que la citada Regla 35.1 de Procedimiento Civil no opera de manera automática en la situación prevista en la misma; requiriéndose, por el contrario, para la imposición de honorarios de abogado a la parte demandante que rechazó una oferta de transacción "más favorable" que la sentencia finalmente obtenida por ella en el caso, una previa determinación de temeridad o arbitrariedad en dicha actuación por parte del tribunal de instancia.

A esos efectos, y a los fines de evaluar la razonabilidad de la oferta, la veracidad de la misma y la buena fe de la parte demandada, los tribunales deberán tomar en cuenta diversos factores a la luz de las circunstancias particulares del caso. Entre éstos, consideramos de vital importancia los siguientes: (1) la cuantía ofrecida, (2) los términos de la oferta, (3) la controversia planteada y (4) la etapa de los procedimientos al momento en que se realiza la oferta.[13]

## IV

En el presente caso, y conforme reseñáramos al comienzo, tanto el tribunal de instancia como el Tribunal

---

[13] Desde hace varios años, otras jurisdicciones han considerado la conducta de la parte demandante al evaluar una oferta de sentencia. En este sentido, el Tribunal Supremo de Nevada, interpretando su Regla 68 equivalente a nuestra Regla 35.1, señaló en Beattie v. Thomas, 668 P.2d 268, 274 (1983), lo siguiente:

> "On the other hand, while the purpose of NRCP 68 is to encourage settlement, it is not to force plaintiffs unfairly to forego legitimate claims. In exercising its discretion regarding the allowance of fees and costs under NRCP 68, see Armstrong v. Riggi, supra, the trial court must carefully evaluate the following factors: (1) whether the plaintiff´s claim was brought in good faith; (2) whether the defendants´ offer of judgment was reasonable and in good faith in both its timing and amount; (3) whether the plaintiff´s decision to reject the offer and proceed to trial was grossly unreasonable or in bad faith; and (4) whether the fee sought by the offeror are reasonable and justified in amount."

Estos criterios han sido sostenidos en decisiones posteriores. Véanse Laforge v. Univ. and Community College System of Nevada, 2000 WL 351204, pág. 4; Dillard Department Stores, Inc. v. Beckwith, 989 P.2d 882, 888

de Circuito de Apelaciones le denegaron a la parte demandada, aún cuando por fundamentos un tanto distintos, su solicitud de que se aplicaran al caso las disposiciones de la Regla 35.1 de Procedimiento Civil, esto es, que se le impusiera honorarios de abogado a la parte demandante <u>conforme</u> se establece en la citada disposición reglamentaria.

De una lectura cuidadosa de la resolución emitida por el tribunal de instancia no surge, con absoluta claridad, si dicho foro judicial denegó dicha solicitud por entender que la parte demandante fue, o no, temeraria. Somos del criterio, en consecuencia, que lo más apropiado es devolver el caso a dicho foro para que éste haga una <u>determinación específica</u> al respecto, conforme a los factores anteriormente enumerados.

Se dictará Sentencia de conformidad.


**FRANCISCO REBOLLO LÓPEZ**
**Juez Asociado**

---

(1999); <u>Schwartz</u> v. <u>Estate of Greenspun</u>, 881 P.2d 638, 642 (1994).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Marcos Morell Corrada, et al.

    Demandantes-recurridos

        vs.                          CC-99-175     CERTIORARI

Luis Francisco Ojeda, et al.

    Demandados-peticionarios

SENTENCIA

San Juan, Puerto Rico, a 20 de julio de 2000

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria de la emitida por el Tribunal de Circuito de Apelaciones, devolviéndose el caso al Tribunal de Primera Instancia, Sala Superior de San Juan, para que ese foro haga una determinación específica sobre si la parte demandante fue, o no, temeraria, conforme los factores enumerados en la Opinión, al rechazar la oferta de sentencia que le hiciera la parte demandada.

Así lo pronunció, manda el Tribunal y certifica la Subsecretaria del Tribunal Supremo. El Juez Presidente señor Andréu García y el Juez Asociado señor Hernández Denton disienten sin opinión escrita. El Juez Asociado señor Corrada del Río inhibido. El Juez Asociado señor Rivera Pérez no intervino.

                                Carmen E. Cruz Rivera
                        Subsecretaria del Tribunal Supremo